Lucas E. Andino, Esq.
Attorney at Law
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (212) 679-3735
Cell phone:(917)647-6240
Fax No.: (718)779-2254

March 27, 2009

**Via ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: <u>USA</u> v. <u>Andre Chandler</u>
         08 cr 558 (KAM)

Dear Judge Matsumoto:

      I represent defendant, André Chandler.  I submit this letter pursuant to Your Honor's scheduling in anticipation of Mr. Chandler's sentencing, to request that Your Honor impose a Non-Guidelines sentence.  Mr. Chandler, who has been imprisoned on the instant charge since December 6, 2007 and in Federal custody since approximately July 15, 2008, would request that the Court consider imposing a sentence of time served.

<u>Statement of Facts</u>

      Mr. Chandler plead guilty on December 11, 2008 to violaton of 18 U.S.C. §751(a), by leaving a non-secure, halfway house facility in which he had been confined by direction of the Attorney General of the United States, without committing any property damage or violence.

Mr. Chandler had been sentenced on May 15, 2003 to a term of 78 months of incarceration by the Hon. Arthur D. Spatt of this District[1]. Following incarceration for approximately 64 months at FCI, Marianna, Florida.  The Bureau of Prisons assigned Mr. Chandler to the Brooklyn Community Corrections Center ("BCCC") at 988 Myrtle Avenue, Brooklyn, New York 11206, a "halfway house."  He arrived there on August 16, 2007, with a projected release date of February 11, 2008.  (See copies of BOP Identification Form and Initial Intake Form, attached hereto as Exhibit 2).

Mr. Chandler escaped from the BCCC on about October 22, 2007, by leaving the Center and not returning.  The Affidavit and Complaint in Support of Warrant for Arrest by Deputy U.S. Marshall Nora Pérez which was provided in the Government's discovery to defendant is attached as Exhibit 3.

Following his escape from BCCC, he returned to his prior neighborhood and address of 21 Hudson Place, Hempstead, New York.  On December 6, 2007 at approximately 12:30 in the afternoon, he was arrested by officers of the Hempstead Police Department at a convenience store located at 235 S Franklin Street, Hempstead, New York.  He was told at the time that he was being arrested on a Federal Warrant, for escaping from BCCC.  See accompanying Hempstead Police Department Arrest Report dated December 6, 2007 at 1322 Hrs, Exhibit 4.

However, after the Police took him to the Precinct, located at 216 Washington Street, Hempstead, New York, the back seat of the squad car was searched.  He was then charged in the

---

[1] Mr. Chandler pled guilty in that case to one count of violating 21 USC §841(a)(1) and 841(b)(1)(B)(iii), possession with intent to distribute a substance containing cocaine base in an amount of more than 5 grams.  At the time of his sentence, he had been incarcerated since the date of his arrest on the charge, May 9, 2002. Judgment Including Sentence Under the Sentencing Reform Act, page 2, a true copy of which is attached hereto as Exhibit 1.

Nassau County Criminal Court with possession of over 500 milligrams of cocaine. PSR¶ ¶6,41.

On February 7, 2008, in the Nassau County Criminal Court, the People produced the Laboratory Report dated February 1, 2007. In the Report, it is found that the amount was "less than 500 milligrams pure substance." A copy of the Lab Report is attached hereto as Exhibit 5. The Court therefore brokered a guilty plea to Attempted Criminal Possession of a Controlled Substance in the 7th Degree, and imposed a $500 fine and NYS driver's license suspension. PSR ¶¶40-41.

On January 17, 2008, while incarcerated and awaiting disposition of this case, Mr. Chandler was arrested inside Nassau County Correctional Center following an altercation with another inmate, and charged with Assault in the Second Degree, a Class D Felony, Penal Law § 120.05, subsection 7("while confined in a correctional facility").[2]

On July 15, 2008, Mr. Chandler plead guilty in the Nassau County Court, to the charge of Assault in the Third Degree, Penal Law §120.00, a class A misdemeanor. He was sentenced to a term of 9 months, See, PSR ¶42, and copy of the Nassau County Court Certificate of Disposition, attached hereto as Exhibit 6.

On July 17, 2008, two days after his Nassau County dispositions, Mr. Chandler was arraigned before Magistrate Orenstein of this Court's Central Islip Courthouse on the Complaint for his escape from BCCC. See Pre-Trial Services Report of same date, attached hereto as part of Exhibit 7. The Bureau of Prisons "Prisoner Remand" form which is attached hereto as Exhibit 8, list both the date of the *offense* and the date of arrest as July 15, 2008, the date of the Nassau

---

[2] It is noted, as relevant to the PSR's Sentencing Guideline analysis, that Mr. Chandler could no longer be deemed to be on "escape status" from his federal incarceration when this charge was incurred.

County dispositions.

The Guilty Plea

On December 11, 2008, Mr. Chandler pled without a written plea agreement.

Criminal History Computation

We submit that the PSR contains a misstatement in ¶¶45-46, in its attribution of a total of three criminal history points pursuant to both USSG §4A1.1(d) (2 points for committing the current offense "while under a criminal justice sentence, the sentence imposed by Judge Spatt on May 15, 2003) and §4A1.1(e) (1 point for committing the instant offense "within two years of his release on the sentence imposed on May 15, 2003").

It would appear that the PSR meant to attribute the third point, pursuant to §4A1.1 (e) subsection (b), for committing the instant offense "while in imprisonment status."

USSG §2P1.1, Application Note 5 refers to the two adjustments in Criminal History as to "custody status" points (§4A1.1[d]) and"recency" points (§4A1.1[e]) .

Reasons for Imposing a Non-Guidelines Sentence

Mr. Chandler has been in jail as a result of the instant offense since December 6, 2007. He has been in Federal custody since approximately July 15, 2008.

    1.Guideline and Sentencing Disparity Affecting his Original Sentence

Judge Spatt sentenced Mr. Chandler on May 15, 2003 to 78 months. Exhibit 1. In his 2003 PSR, he had been found to be an Adjusted Offense Level 27. His Criminal History Category in that PSR was Category III. The Probation Department recommended a Sentence of 87 to 108 months.

Mr. Chandler disputed the Criminal History Computation, and Judge Spatt sentenced him to 78 months, apparently finding him to be Criminal History Category II.

Effective November 1, 2007, the United States Sentencing Commission adopted Amendment 706, which in essence allowed a two level reduction of adjusted Guideline levels and concomitant sentence reductions for defendants, such as Mr. Chandler, who had been sentenced under the Crack Cocaine guidelines influenced by the still extant 100-1 powdered to crack cocaine ratios. This would have resulted in eligibility to have his Guidelines reduced to Level 25, Criminal History Category II, with a sentencing range of 63 to 78 months. Since Mr. Chandler's May 15, 2003 sentence has either expired already or will expire shortly without Amendment 706 having ever come into play, it is submitted that the Court consider the length of that sentence which as a *pre-Booker* sentence was *mandated* by the disparity between the powder and crack cocaine in deciding to impose a non-Guideline sentence here. <u>Kimbrough v. United States</u>, ___ U.S. ___, 128 S.Ct. 558, 564 (2007).

    2.Administrative Penalties For the Offense Extending his Original Sentence

When Mr. Chandler escaped on October 22, 2007, his expiration date was February 11, 2008. See copies of BOP Identification Form and Initial Intake Form, attached hereto Exhibit 2.

After being confined at the MDC in July 2008, Mr. Chandler requested a computation of his May 15, 2003 sentence. The BOP generated a computerized computation dated September 22, 2008 of the time remaining on that sentence. A copy of the computation and accompanying documents dated September 23, 2008 are attached hereto as Exhibit 9. The BOP computed the expiration date of his May 15, 2003 sentence as March 15, 2009 (see page 2 of the BOP computation, "Statutory Release Date Projected: 03-15-09."). It should be noted that his pre-

release preparation date with this expiration date, according to the information at the top of page one of this exhibit was September 15, 2008.

The first page of the accompanying September 23, 2008 "Inmate Discipline Data Chronological Disciplinary Record" indicates, in its first two entries, that for the incident of leaving Brooklyn CCC on October 20, 2007 and returning on October 21, the day before his escape, and for the October 22nd incident of his escape (the first two entries on that sheet) Mr. Chandler was penalized in two different Reports (Nos. 165931 and 16590) as follows:

(1) Loss of 10 days Good Conduct Time, and forfeiture of 60 days of Non- Vested Good Conduct Time (Report 165931); and

(2) Loss of 20 days Good Conduct Time, forfeiture of 60 more days of Non-Vested Good Conduct Time (Report 165930).

He was therefore penalized by the extension of time to be served on his May 15, 2003 sentence by loss of a total of 30 days Good Conduct Time and a total of 120 days of Non-Vested Good Conduct Time. See also page 1 of 1, September 22, 2008 "Sentence Monitoring Good Time Data As Of 09-22-2008," the third column under section titled "Good Conduct Time Amounts."

We ask that the Court consider the fact that Mr. Chandler has already been punished for the instant offense by the loss of 150 days or five months in Good Conduct Time for this offense, in imposing a Non Guideline Sentence here.

Speedy Trial Due Process Consideration

We note that at the first page of the BOP September 22, 2008 computation in Exhibit 9, page 2 of 2, there is inoperative time from the date of his escape, October 23, 2007, to July 15, 2007, the date of his arraignment on the instant charge. The Government documents appear to

6

take the position that Mr. Chandler was neither found nor arrested until July 15, 2007.

However in the Hempstead Police Department Arrest Report (Exhibit 4), it is clear that he was arrested on December 6, 2007 at 235 South Franklin Street, when he was arrested because he was wanted by the Federal Fugitive Squad, according to what the arresting officers told Mr. Chandler.  The PSR on its cover sheet purports to support the Government version that he was arrested locally and *then* transferred to Federal custody on July 15, 2007.  However, at PSR ¶¶ 5 and 6 it is noted that a Federal Arrest Warrant was issued on October 22, 2007, and that he was arrested pursuant to that warrant.

During Mr. Chandler's July 17, 2008 arraignment in Central Islip on the instant charge, he has informed me that Magistrate Orenstein questioned the Government about why it had taken so long to arraign him after his December 6, 2007 arrest.  Such delays can have Due Process implications.  *See*, United States v. Doggett, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2s 520 (1992); People v. Romeo, ___ N.Y.3d ___, 2009 WL 321009 (February 11, 2009).

We note that Federal inmates and defendants are routinely kept at Nassau County Correctional Center, where Mr. Chandler was incarcerated after his December 6, 2007 arrest.  He therefore could have been arraigned on the Federal Arrest Warrant promptly after his arrest or at any time thereafter.

We are requesting that the Court take this into consideration in imposing a Non-Guidelines sentence.

Mr. Chandler's Life and Characteristics

      In the PSR's review of Mr. Chandler's criminal record beginning at ¶21, Mr. Chandler's first criminal offense occurred at the age of fourteen. There is agreement that prior to that age, Mr. Chandler was an easy child for his mother to raise, was a quick learner, showed promise in sports and in many other ways.

      Mr. Chandler has related to me that his first contact with a gang began in 1997, the year he became fourteen years old. He became a member one year later, in 1998, when he was fifteen.

      Mr. Chandler converted to Islam in October, 2003, at the age of 20. He is now 25. When he converted to Islam he was required to choose between the religion and any conflicting affiliation. He has advised me that during his time in Federal custody pursuant to the sentence of May 15, 2003, he has not been affiliated with the gang, even though inmates at every facility he has been at are expected to continue to act as gang members.

      Mr. Chandler is aware that for a person of such a young age, he has now accumulated a disturbingly high Criminal History Computation, and that any future transgression in drugs or anything else could result in his being sentenced as a career offender.

      He is aware that he needs to change his life, so that he can be there for (and live with) his wife and her two boys, and for his daughter from a prior union. He realizes that it is time for him to stop having his most important social interactions within the limited confines of prison visiting rooms.

      Mr. Chandler realizes, as have others, that he has talents and smarts that can be channeled into work that he is passionate about. He has confided in me that perhaps some day he can counsel and help youngsters like him on how to avoid some of the pressures and

temptations and affiliations out there and live productive lives helping their community.

  We are asking Your Honor to take all of these considerations into account and impose a Non-Guideline sentence.

                Sincerely,

                s/

                Lucas E. Andino


cc: AUSA John Nowak, Esq.(via ECF)
  Lisa Famularo